## LILLIS *v.* PENNSYLVANIA CASUALTY CO.

ATTORNEY AND CLIENT — EMPLOYMENT — SERVICES RENDERED— INTEREST IN LITIGATION.

A railroad company, being sued for an accident, forwarded the declaration to an indemnity company, whose policy it held. The declaration was delivered to the general attorneys for the indemnity company, who were also local attorneys for the defendant casualty company. These attorneys wrote plaintiff, also an attorney, that the railroad company was insured in the defendant company, and directed him to appear and defend the suit. Plaintiff entered his appearance and rendered some services, corresponding thereafter with the indemnity company, to which he at one time presented his bill. *Held*, that, since defendant was not interested in the litigation, and plaintiff was not employed by defendant nor by any one authorized by it to hire him, he could not recover for his services.

Error to Oakland; Smith, J.   Submitted April 25, 1902. (Docket No. 41.)   Decided June 27, 1902.

*Assumpsit* by Michael F. Lillis against the Pennsylvania Casualty Company for services rendered. From a judgment for plaintiff, defendant brings error. Reversed.

*Graves & Hatch,* for appellant.

*George E. Beardslee* (*A. R. Tripp* and *H. H. Colvin,* of counsel), for appellee.

Moore, J. The plaintiff is an attorney at law. He brought this suit to recover $265.20 for services rendered and for expenses incurred by him, which he claims defendant should pay. The case was tried by a jury, who rendered a verdict for $193.50. The case is brought here by writ of error.

The defense claimed is: *First,* that plaintiff was never employed by defendant; *second,* that, when the case which Mr. Lillis was employed to defend was about to be tried, he abandoned it, without cause, making it necessary to employ another attorney, who did not have time to familiarize himself with the case before it was brought to trial, and the service rendered by Mr. Lillis was of no value. In our view of the case, it will not be necessary to express any opinion in relation to the second of these defenses.

The record discloses that in December, 1899, one Erard was injured on the Detroit & Pontiac Railway. At this time the railway company had a policy in the American Mutual Indemnity Company insuring it against loss by reason of such accidents as Erard claimed to have suffered. A similar policy was taken by the railway company in the Pennsylvania Casualty Company, January 1, 1900. In June or July, 1900, Mr. Erard sued the railway company. The declaration commencing suit was forwarded by the railway company to Mr. Kingsbury, who was assistant to the president of the American Mutual Indemnity Company and secretary of the Pennsylvania Casualty Company, living at Scranton, Pa. The declaration was delivered to Watson, Diehl & Kemmerer, who

were the general attorneys of the American Mutual Indemnity Company, and local attorneys of the Pennsylvania Casualty Company. Mr. Watson, of this firm, was president of both companies. He was absent from home at this time, and Mr. Diehl, assuming the Pennsylvania Casualty Company was interested in the litigation, sent the declaration by letter to Mr. Lillis, writing him, in the name of Watson, Diehl & Kemmerer, that the railway company was insured in the Pennsylvania Casualty Company, of which his firm were the general attorneys, and directing him to appear in the case, and make a defense. Mr. Lillis entered an appearance in the case, and looked after it, and employed an officer to look up the testimony. Afterwards he did all his correspondence with the American Mutual Indemnity Company, and before bringing suit presented his bill to that company, explaining his action in doing so by saying that he had mislaid the letter from the attorneys inclosing the declaration, and, having attended to a suit of like character before, in which the American Mutual Indemnity Company was looking after the litigation, he supposed it was doing so in this case. Later, Mr. Lynch, who had attended to other business for the railway company, received the following letter:

"DETROIT & PONTIAC RAILWAY CO., DETROIT.
"Office, 217 Hammond Building.
"DETROIT, MICH., September 21st.
"JAMES H. LYNCH, Esq.,
"Pontiac, Mich.
"*Dear Sir:* The Pennsylvania Casualty Company has requested us to take active interest in the Erard matter, and I suppose they have written Mr. Lillis to the same effect. Will you please consult with him, bringing up the matter especially of improving the strength of the medical testimony?
"Yours truly,
"STRATHERN HENDRIE,
"Manager."

After receiving this letter he showed it to Mr. Lillis, and sought to have a consultation with him. Mr. Lillis

took offense at this condition of affairs, and at once wrote to the attorneys who had sent him the declaration, and also to the American Mutual Indemnity Company, withdrawing from the case. Upon receipt of the last-named letter the following telegram was sent:

"SCRANTON, PA., Sept. 24, 1900.
"M. F. LILLIS, Esq.,
        "Pontiac:
"I do not understand your letter. Want you to take care of the Erard case. See Kingsbury at the Russell House.                    W. W. WATSON."

Upon receipt of this telegram Mr. Lillis went to the Russell House, but, as Mr. Kingsbury had gone to Pontiac, they failed to see each other. The result was that Mr. Lillis gave Mr. Lynch such papers and files as he had, and the deputy sheriff co-operated with Mr. Lynch, who tried the case. Mr. Lillis did not participate in the trial, which commenced September 26th, and resulted in a very considerable verdict against the railway company. Mr. Lillis presented his bill to, and had some correspondence with, the American Mutual Indemnity Company; and later, having found the letter in which the declaration was sent to him, and being unable to effect a settlement, instituted this suit.

The record is very clear that the Pennsylvania Casualty Company was not the successor to, and did not assume the liabilities of, the American Mutual Indemnity Company. It is also clear it was not interested in the litigation between Mr. Erard and the railway company. It is equally clear that there is an entire failure to show a hiring of Mr. Lillis by the defendant company, or by any one authorized by it to hire him. Mr. Lillis no doubt performed active and valuable services, and acted in good faith. There seems to have been an unfortunate mistake all around as to the relations of the parties to each other. It is probable, had not this mistake occurred, there would have been no trouble, and no occasion for this litigation; but, under the rule of law putting the burden of proof

upon Mr. Lillis to make his case, we think it was the duty of the court to direct a verdict in favor of the defendant.

The judgment is reversed, and a new trial ordered.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.